## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| FOSTER BOY MOVIES, LLC, an Illinois Limited Liability Company, individually and on behalf of all others similarly situated, as a putative and requested class of filmmakers, | ) ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) ) | C.A. No. 1:24-cv-13324 |
| YOUTUBE, INC.; AFDR FILM HOLDINGS, LLC; SVETLANA MIRONOVA, Individually and as an Agent of AFDR FILM HOLDINGS, LLC, CINETIME ACROSS AGES and MOVIE MAGIC; CINETIME ACROSS AGES; MOVIE MAGIC; TRIAS MEDIA GROUP, GMBH; and PETER VON ONDARZA, Individually and as an Agent of TRIAS MEDIA GROUP, | ) ) ) ) ) ) ) ) ) ) ) ) | Hon. Sharon Johnson Coleman  Mag. Judge Heather K. McShain |
| Defendants. | ) ) | |

## THIRD AMENDED COMPLAINT

Plaintiff Foster Boy Movies, LLC, an Illinois Limited Liability Company, individually and on behalf of all others similarly situated, as a putative class[1] representative, by and through their undersigned counsel, for their Complaint against Defendants YouTube, Inc. ("YouTube"); AFDR Film Holdings, LLC ("AFDR"); Svetlana Mironova ("Mironova"), individually and as an agent of AFDR and CineTime Across Ages ("CineTime") and Movie Magic ("Movie Magic"); CineTime; Movie Magic; Trias Media Group ("Trias") GmbH; and Peter Von Ondarza ("Von Ondarza"), individually and as agent of Trias (collectively, "Defendants"), allege as follows:

---

[1] Plaintiff's motion under FED. R. CIV. P. 23(b)(3) for Class Certification is anticipated to be filed within 30 days of the filing of this Complaint.

## CERTIFICATION OF THE CLASS

1.    Numerosity Under FED. R. CIV. P. 23(a)(1).   The Class is so numerous that the individual joinder of all members is impracticable, and the disposition of the claims of all Class members in a single action will provide substantial benefits to the parties and the Court.  Plaintiff, on information and belief, allege that the Nationwide Class includes thousands of individual filmmakers/content creators who have each had the copyright in their respective film infringed in violation of the copyright laws of the United States.[2]

2.    Commonality Under FED. R. CIV. P. 23(a)(2).  Common legal and factual questions exist that predominate over any questions affecting only individual members.   These common questions, which do not vary among members, and which may be determined without reference to any member's individual circumstances, include, but are not limited to:

a.  Whether or not YouTube acted deliberately, willfully, and/or with willful blindness in repeatedly and systematically allowing the infringement of filmmakers' copyrights on the YouTube platform.

b.  Whether YouTube acted in concert and jointly with the co-defendant companies listed herein, thereby contributing to copyright infringement, in order to monetize and profit from the infringing content.

c.  Whether all Defendants acted in concert and jointly against the purported putative class of plaintiffs to infringe their intellectual property (films, television shows and similar content), and in a manner to willfully avoid or misuse the copyright laws of the United States in order to obtain profits and become unjustly enriched.

3.    Typicality Under FED. R. CIV. P.  23(a)(3).  Plaintiff's claims are typical of the Class member's claims.  Defendants' course of conduct caused Plaintiff and the Class members the same

---

[2] Various potential class members have expressed fear of retaliation because of the power and ownership structure that Defendants, and in particular YouTube and its parent Google, Inc., have in the distribution of films.

harm, damages, and losses as a result of Defendants' uniformly unlawful conduct, meaning a loss of profits and monetization of their films and content. Likewise, Plaintiff and other Class members must prove the same facts in order to establish the same claims, inclusive of the facts set forth herein.

4.     Adequacy of Representation Under FED. R. CIV. P. 23(a)(4). Plaintiff is an adequate representative of the Class because Plaintiff is a member of the Class of independent filmmakers and Content providers that have suffered the same harm and infringement, and its interests do not conflict with the interests of the Class. Plaintiff has retained counsel competent and experienced in complex litigation and intellectual property copyright infringement and matters such as this action, and Plaintiff and its counsel intend to vigorously prosecute this action for the Class's benefit and have the resources to do so. Plaintiff and its counsel have no interests adverse to those of the other members of the Nationwide Class.

5.     Superiority Under FED. R. CIV. P. 23(b)(3). A class action is superior to all other available methods for the fair and efficient adjudication of this controversy because individual litigation of each Class member's claim is impracticable. The damages, harm, and losses suffered by the individual members of the Class will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendants' wrongful conduct. Even if each Class member could afford individual litigation, the Court system would be unduly burdened, e.g., if the countless individual cases proceeded. Individual litigation also presents the potential for inconsistent or contradictory judgments, the prospect of a race to the courthouse, and the risk of an inequitable allocation of recovery among those individuals with equally meritorious claims. Individual litigation would increase the expense and delay to all parties and the Courts because it requires individual resolution of common legal and factual questions. By contrast, the class action device presents far fewer management difficulties and provides the benefit of a single adjudication, economies of scale, and comprehensive supervision by a single court.

## JURISDICTION AND VENUE

6.      Plaintiff Foster Boy Movies, LLC ("Foster Boy"), at all times relevant, was and is an Illinois Limited Liability Company, doing business within the State of Illinois, with offices at 221 N. LaSalle, Chicago, Cook County, Illinois.

7.      Gravitas Ventures, LLC, ("Gravitas"), at all times relevant, was incorporated as a Limited Liability Corporation, in Florida, with primary headquarters in Cleveland, Ohio, doing business in Ohio and Illinois, and has been and is a distributor of the film "Foster Boy" ("the Film").

8.      On or about September 20, 2020, Foster Boy executed a contract with Gravitas in Chicago, Illinois, Cook County.  Gravitas held zoom and other meetings, within the County of Cook, State of Illinois.  Primary negotiations and contractual terms were met within the County of Cook, State of Illinois.

9.      Defendant YouTube, at all times relevant, was and is a Delaware Corporation doing business throughout the United States, and in the State of Illinois.

10.      Defendant AFDR, at all times relevant, was and is a Colorado Limited Liability Company doing business throughout the United States and in the State of Illinois.

11.      Defendant Mironova, at all times relevant, acted individually and as an agent of AFDR, CineTime and Movie Magic, upon information and belief, resides in Istanbul, Turkey.  Mironova, upon information and belief, acted on behalf of several foreign "entities" to individually defraud Plaintiff and the prospective class of plaintiffs.

12.      Defendant CineTime, at all times relevant, was and is an entity whose location is currently unknown but who was identified on a YouTube platform page as the entity who unlawfully uploaded the Film onto the YouTube platform.

13.      Defendant Movie Magic, at all times relevant, was and is an entity whose location is currently unknown but who was identified on a YouTube platform page as the entity who unlawfully uploaded the Film onto the YouTube platform.

14.     Defendant Trias, at all times relevant, was and is a German company doing business throughout the United States and within the State of Illinois, distributing films for viewing.

15.     Defendant Von Ondarza, at all times relevant, acted individually and as an agent of Trias, and resides in Potsdam, Germany.

16.     Upon information and belief defendants Svetlana Mironova, and other unnamed defendants at all times relevant, were and are independent operators of a foreign network of "channels" on the YouTube platform, inclusive of yet to be identified channels which uploaded and/or provided access to copyrighted films and other Content owned by the prospective class of individual filmmakers/content owners, inclusive of Plaintiff, without authorization from their respective owners.

17.     Upon information and belief, and at all times relevant, YouTube was and is a subsidiary of Google, Inc., a Delaware corporation, and operates independently on branding and management.

## ALLEGATIONS AS TO ALL COUNTS

18.     Foster Boy is the owner of copyrighted works that have been registered with the United States Copyright Office.  These registrations are as follows:  Foster Boy (2020) PAu004084117; Foster Boy (2013) PAu003667141; Foster Boy Motion Picture (2017) V9959D566; Foster Boy Screenplay (2017) V9952D783.  All similarly situated members of the putative class have registered their works, e.g., film, with the United States Copyright Office.

19.     The putative class of plaintiffs have complied in all respect with 17 U.S.C. 101 et seq., and have been and remain the sole owner of all rights, title, and interest in and to the copyrights in their respective works as referenced above.  Multiple filmmakers have requested or inquired about "joining" the class and being represented in connection with the assertion of copyright infringement against the Defendants, but have indicated that they fear retaliation from YouTube and/or its parent company (Google, Inc.) and therefore do not want to be a named as a plaintiff on the instant Complaint.

20.     Defendant YouTube is in the business providing a "platform" that permits viewing by the public of films, videos and other audiovisual content (herein referred to as "Content") that has been

5

uploaded onto its platform by third parties, such as the Co-Defendants.  The YouTube platform is accessible at http://www.youtube.com.  YouTube, via its platform, makes Content available for viewing without charge (and some Content for purchase) as well as for fee, within this judicial district, throughout the United States, and worldwide.

21.     YouTube generates revenue by displaying advertisements before, during, or alongside Content viewed on its platform.  As public viewership of the Content and/or associated advertisements increases, so does YouTube's revenue.  This revenue stream does not depend on whether the Content is uploaded by the copyright owner or by unauthorized entities with no rights to the copyrighted Content.  Removing unauthorized Content from the YouTube platform reduces the number of advertisement impressions associated with the Content, which in turn reduces YouTube's revenue.  For at least this reason, YouTube is not incentivized to make meaningful efforts to remove infringing content from its platform – including pirated/infringing Content.

22.     YouTube has not had, and does not have, any contractual relationship with the named Plaintiff, nor with the class of prospective represented plaintiffs.

23.     YouTube operates a Content Management System (hereinafter "CMS").  The CMS created and/or implemented by YouTube enables filmmakers and other content users to have a CMS account, this account allowing the creation, storage, organization, management, and presentation of Content (including films) on the YouTube platform.  It is within the CMS where various recordings, inclusive of films, can be onboarded and then made available for viewing on a worldwide basis.

24.     YouTube has used and continues to use a tool within the CMS system called CONTENT ID which detects copyrighted material.

25.     YouTube advertises and promotes to filmmakers/distributers and owners of intellectual property rights that their CMS accounts (inclusive of filmmakers), which also may be referred to as

"channels," provide them with advanced content ID tools to manage their copyright assets and prevent pirating or theft of their intellectual property.

26.     Upon information and belief, YouTube controls and sets the terms of service for use of the CMS channels.  YouTube has and continues to implement certain CMS channels maintained for independent filmmakers and content owners which is a separate, parallel infrastructure relative to other "privileged" channels.  The "independent" CMS channels function without standard enforcement mechanisms available to other CMS channels — including monetization eligibility review, duplicate-content detection, and Content ID blocking.

27.     This CMS channel architecture was marketed as a rights-management convenience for media partners, but in practice it was utilized to protect certain "privileged" CMS channel owners, while allowing the non-privileged channels (for the independent filmmakers and Content providers that comprise the prospective class of plaintiffs herein) to be more readily susceptible to pirating and copyright infringement. This dual-class system allowed large-scale commercial exploitation of pirated and duplicate content, creating an unlawful and unfair competitive advantage over the prospective class of independent filmmakers and Content providers.

28.     YouTube thus selectively implemented its CONTENT ID, in a pattern and practice that excluded the class of plaintiffs herein to their extreme detriment.  For example, certain CMS-linked "privileged" channels could be automatically approved for monetization, benefiting both YouTube and the Co-Defendants, bypassing many eligibility reviews applied to "non-privileged" *regular* YouTube channels and CMS-linked channels.

29.     Plaintiff and the class of filmmakers/content owners were unknowingly exempt from YouTube's duplicate-content detection and often not subject to Content ID enforcement, allowing their copyrighted works — including feature films — that were uploaded and viewed without their authorization to remain on the YouTube platform and monetized.

7

30. These selective "privileged" CMS-linked uploads also received disproportionate visibility in search and recommendation algorithms — typically generating 10–15 times higher viewership and ad revenue than identical content uploaded through regular and legitimate user channels. These outcomes were not incidental or algorithmic accidents but the direct consequences of YouTube's structural and policy design, which created a protected layer of "privileged" partners operating outside normal compliance systems, and allowing for copyright infringement/pirating of Content owned by the prospective class of plaintiffs.

31. Through the above implementation of their designed CMS system and selective application of Content ID, YouTube receives revenue from the display of advertisements before, during, or alongside the Content on the channels that are connected to the CMS accounts, even if the Content is pirated/unauthorized by the copyright owner.

32. Defendants Mironova, individually and as agent of AFDR, CineTime, and Movie Magic, and Von Ondaraza, individually and as agent of Trias, created with YouTube separate CMS accounts/channels knowing that the CONTENT ID and/or other means of infringement detection would not be used on their channels, thereby permitting Defendants to, without authorization from the owners, upload and display on their respective channel Content owned by the individual filmmakers/content owners (such as the plaintiff class), and thereby infringe the copyrights thereon, with impunity.

33. Defendants sell and/or distribute the plaintiff class's pirated Content through their YouTube accounts/channels to the public within this judicial district and throughout the State of Illinois and the United States, generating substantial revenue and profits from these infringing acts.

34. Upon information and belief, there are thousands of films that have been uploaded and viewed by the public on these separate "privileged" CMS platforms/channels operated by the Co-Defendants wherein YouTube knew and/or willfully ignored the fact that there was no contract

or other authorization from the copyright owners of the Content that permitted the uploading and public viewing of the Content (including films) on these CMS platforms/channels, including after YouTube was advised that Content on certain "privileged" channels was unauthorized by producers of the Content.

35.     For example, certain networks have or had CMS accounts and entire channels without Content ID protection that provided access to pirated content (unauthorized by the copyright holders)

36.     In addition to creating and/or implementing the separate CMS shadow (regular, or non-privileged) system, YouTube had direct and/or red-flag knowledge about infringing/pirated Content on various channels, but failed to remove or disable access to the infringing Content.  Illustrative of such instances where YouTube willfully disregarded the rights of copyright owners are set forth in subparagraphs (a) – (h):

(a)     YouTube has been advised that there has been Fraud and Abuse of YouTube CMS System and that there were serious and large-scale abuses occurring and the use of forged documents using shell companies by a specific fraudulent CMS holders, yet YouTube failed to take appropriated corrective measures.

(b)     Individual owners of CMS accounts have reported directly through email, and online chats, that their protected intellectual property was being repeatedly infringed/pirated by the same YouTube channel/channel owner, and that a systematic violation and abuse of their copyright was occurring.

(c)     YouTube knowingly allowed multiple corporate entities to upload the same film under different corporate entities on separate channels through the same CMS accounts in violation of their own policies.

(d)     In 2020, there were numerous meetings between organizations that fought against piracy of independent films and Google/YouTube representatives, wherein YouTube was specifically told and advised that independent filmmakers were being pirated on a routine and consistent basis.  These independent filmmakers and their collective organizations pled with YouTube and Google to take action to prevent the continued pirating of their Content.

(e)     Co-Defendants such as Mironova and submitted false contracts to YouTube on multiple occasions; YouTube was then specifically advised by the filmmakers and IP owners that these "bad actors" were pirating/infringing the films, but YouTube continued to allow the films to be shown on other channels, even after acquiring knowledge of the "bad actors".

(f)     When individual IP holders reported infringement to YouTube, YouTube would respond by stating that the repeat infringers had "contracts" – yet YouTube failed to require the infringers to produce the contracts and refused to produce any contracts to the IP holders.

(g)     The pirated or infringing Content was obvious because, in the case of films, the end credits or portions of the film were cut off, or a viewer could obviously see the framing was not properly fit to the screen indicating that the film was recorded in an unauthorized manner from another screen or other device.

(h)     There have been multiple federal, civil and criminal actions where YouTube was advised and notified that fraudulent companies partnered with and/or held with CMS accounts/channels and provided false contracts and false documents so that the pirated/infringing Content could remain on the channel for viewing.

37.     As a consequence of YouTube's willful disregard for the rights of copyright holders following notice and/or knowledge of infringing conduct occurring on its platform, YouTube has forfeited its eligibility for DMCA safe harbor protection.

38.     YouTube has not had, and does not have, any contractual relationship with the named Plaintiff, nor with any member of the class of prospective represented plaintiffs, for with respect to any of the Content that may be part of this class action.

39.     Defendants Mironova, individually and as agent of AFDR, CineTime, and Movie Magic; AFDR; CineTime; Movie Magic; Von Ondaraza, individually and as agent of Trias; and Trias, are using Plaintiffs copyrighted materials without the permission of Plaintiffs in order to obtain substantial and illicit profits.  These Defendants collectively managed over hundreds of channels across multiple CMS accounts and monetized thousands of pirated films.  These individuals and companies used falsified licensing agreements and fraudulent documentation to obtain and maintain their CMS access from YouTube.

40.     As one example, after filing the original of the instanter complaint against YouTube, counsel for Plaintiff advised YouTube's counsel that Plaintiff had no contract with any entity authorizing the Film (Foster Boy) to be distributed and made available for viewing on any YouTube channel (other than the Gravitas channel).  Yet, as of the date of this filing, YouTube

has again permitted the Film (Foster Boy) to remain available for viewing – allowing for thousands of unauthorized (pirated) viewings of the film. Further, YouTube also knows through submissions by Foster Boy's counsel (and via their internal records relating to same) that Foster Boy has submitted take down notices, and YouTube was specifically advised that there is and will be no agreement with any outside company (other than Gravitas) to permit the Film Foster Boy to be viewed on any YouTube channel – yet YouTube continues to permit this infringing viewing of the film.

41.     The beneficial owners and operators of several unnamed entities/CMS accounts – and the named entity run by Mironova – coordinated their respective network channel's operations, oversaw CMS-based monetization across multiple accounts, and acted deliberately to infringe the copyrights of the prospective class of plaintiffs.

42.     Upon information and belief, detailed reports were submitted to YouTube describing how YouTube's Content Management System (CMS) infrastructure enables and conceals large-scale copyright infringement through fraudulent CMS accounts, and provides foundational factual (including technical) evidence supportive of the claims set forth in this Complaint.

43.     As CMS partners under direct contractual relationships with YouTube, these bad actors were agents or beneficiaries of YouTube's partner infrastructure, and their misconduct occurred within the YouTube-managed platform with the knowledge or willful blindness of YouTube.

44.     Defendants individually and in concert with other unnamed entities and other bad actors acted to infringe the copyrights of, and abscond with copies of, Content owned by the class of prospective plaintiffs. Further said Defendants acted to sell and/or distribute the Content via

the YouTube platform to the general public within this judicial district and the State of Illinois, throughout the United States and worldwide.

45.     Defendants have willfully ignored the named Plaintiff's, and the prospective class of independent filmmakers and Content providers, repeated warnings to Defendants that Plaintiffs do not want their copyrighted Content manufactured, distributed or shown to the public without consent, and that Defendants' use of said Content was unauthorized.  The specific acts of infringement described above are simply representative of a market scale pattern and practice of infringement in which Defendants make unauthorized use of the Content owned by Plaintiff and similarly situated filmmakers 24 hours a day, every day, through the Defendant YouTube's platform.

46.     Specifically with regard to Plaintiff Foster Boy alone, to date more than 1,200,000 views of the Film (Foster Boy) have occurred illegally, without authorization, through the YouTube platform.

47.     Upon information and belief, YouTube offers CMS protection "tiers" to certain copyright holders.  This paradigm leaves the owners of Content, such as Plaintiff and prospective class of independent filmmakers and Content providers, between a proverbial rock and a hard place – they can either have their copyright interests violated on YouTube without recourse or provide additional consideration to have an opportunity to protect their interests.  Under either choice, YouTube profits and the Plaintiff and prospective class of independent filmmakers and Content providers unduly suffer significant financial loss.

## COUNT I

## COPYRIGHT INFRINGMENT

48.     Plaintiff incorporates paragraphs 1 – 47 as if fully set forth herein.

12

49.     The conduct of each of Defendants Mironova, individually and as agent of AFDR, CineTime, and Movie Magic; AFDR; CineTime, Movie Magic; Von Ondaraza, individually and as agent of Trias; and Trias, has violated, and continues to violate, the exclusive rights belonging to named Plaintiffs and the prospective class of independent filmmakers and Content providers similarly situated as owners of their respective copyrights including, without limitation, rights under 17 U.S.C. § 106.

50.     Upon information and belief, Plaintiff alleges that, as a direct and proximate result of their wrongful conduct, these Co-Defendants have realized and continue to realize profits and other benefits rightfully belonging to Plaintiff and and the prospective class of independent filmmakers and Content providers.  Accordingly, Plaintiff seeks, at a minimum, an award of damages pursuant to 17 U.S.C. §§ 504 and 505.

51.     The infringing conduct of these Co-Defendants has caused and is causing substantial and continued irreparable injury and damage to Plaintiff and the prospective class of independent filmmakers and Content providers and, unless restrained, will cause further irreparable injury.  This conduct has made it impossible for independent filmmakers to remedy the situation as Defendants are engaging in these acts from non-US locations – in various countries across the world.  These Co-Defendants are foreign entities, largely conducting business outside the United States, and frequently changing addresses, names and websites.

52.     On information and belief, these Co-Defendants have willfully engaged in, and are willfully engaging in, the acts complained of with oppression, fraud, and malice, and in conscious disregard of the rights of Plaintiff and the prospective class of independent filmmakers and Content providers.  Plaintiff and the prospective class members are, therefore, entitled to the maximum statutory damages allowable, and any and all available enhanced remedies for willfulness.

13

53. These Co-Defendants, acting individually and/or in concert with one another, and/or with the willful blindness and disregard of YouTube, have infringed and continue to infringe copyrights in Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers, by uploading, distributing, hosting and/or providing availability to the public, their copyrighted Content, including Plaintiff's Film Foster Boy, without authorization, in the United States and worldwide, and have received revenue and profits therefor to the exclusion of the copyright owners (Plaintiff and the prospective class of independent filmmakers and Content providers).

54. These Co-Defendants have also entered into false and fraudulent contracts with YouTube, and further provided false information to YouTube concerning Co-Defendants' rights in the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers, which then permitted and/or caused the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers to be uploaded, distributed and available to the public worldwide, without authorization by the copyright owners, through the YouTube platform via channels.

55. These Co-Defendants are conducting business outside the United States, and are changing names, addresses, and/or corporate locations throughout Europe, Russia and elsewhere, deliberately creating an impossible scenario for Plaintiff and the prospective class of independent filmmakers and Content providers to enforce the laws of the United States with regard to copyright infringement occurring in the United States and elsewhere, or to collect any judgement that may be obtained against these Co-Defendants.

56. WHEREFORE, Plaintiffs and the prospective class of independent filmmakers and Content providers respectfully request:

14

A.      Entry of judgment in their favor and against Co-Defendants, jointly and severally, finding that copyrights in the Content owned by Plaintiffs and the prospective class of independent filmmakers and Content providers have been and are infringed by the actions of Co-Defendants.

B.      Statutory damages pursuant to 17 U.S.C. § 504(c) in an amount between $750 and $30,000 per work infringed, or up to $150,000 per work for willful infringement, at Plaintiffs' election.

C.      Actual damages and Co-Defendants' profits attributable to the infringement under 17 U.S.C. § 504(b), to be determined at trial.

D.      A preliminary and permanent injunction under 17 U.S.C. § 502(a) and 28 U.S.C. § 1498 enjoining Co-Defendants from storing, uploading, reproducing, distributing, displaying, or providing for the public availability of the copyrighted Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers.

E.      An order terminating and dismantling all CMS accounts and related YouTube channels operated by these Co-Defendants.

F.      An order requiring a comprehensive audit of all CMS and O&O (Owned and Operated) accounts of the Co-Defendants to determine the extent of infringing content and revenue generated therefrom.

G.      An order requiring YouTube to remove or disable access to all copies of the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers on its platform, pursuant to 17 U.S.C. § 512(j).

H.      An order under 17 U.S.C. § 503(b) for the impoundment and destruction of all copies of the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers in the possession of any Co-Defendant.

I.      Reasonable attorneys' fees and costs under 17 U.S.C. § 505 due to Co-Defendants' willful infringement.

J.      Prejudgment and post-judgment interest on all monetary awards.

K.      Such other and further relief as the Court deems just and proper.

## COUNT II

## CONTRIBUTORY COPYRIGHT INFRINGEMENT

57.     Plaintiff incorporates paragraphs 1 – 56 as if fully set forth herein.

58.     Plaintiff and the prospective class of independent filmmakers and Content providers created and own copyrighted Content.

59.     YouTube deliberately created, or caused to be created, a hierarchy of CMS accounts, one for "privileged" CMS channel owners and a second for non-privileged or regular Content owners. This secondary non-privileged, or regular, CMS system operates outside normal policy enforcement and has enabled large-scale piracy and unfair competition.

60.     Specifically, through this secondary CMS tier, YouTube has engaged in a knowing pattern and practice of encouraging and fomenting the piracy and unauthorized use of copyrighted Content by contracting with foreign entities that provide false contracts and credentials.  The deliberate design and maintenance of a system that exempts certain "privileged" partners from enforcement constitutes willful blindness or active complicity in large-scale copyright infringement.

61.     YouTube has thus deliberately, knowingly or with willful blindness contributed to copyright infringement with Co-Defendants, foreign entities and/or individuals in order to increase profits, in one or more of the following ways:

a.      YouTube deliberately created the "privileged" tier of the CMS-linked channels with the effect of bypassing YouTube's CONTENT ID and other eligibility reviews, so that pirated or infringing Content would not be detected.

b.      By permitting a bypass of eligibility reviews, those entities in the the "privileged" tier allows these copyright infringers to falsely contract with YouTube and

16

monetize profits by selling ads and dividing the profits between YouTube and the infringers.

c. By deliberately creating the "privileged" tier, or caused same to be created, YouTube provided an algorithm that excludes pirated and infringing Content from duplicate-content detection and Content ID matches and/or takedowns.

d. YouTube knew that by creating this alternative tier/level of the CMS system, it would allow and does allow uploads that receive disproportionate visibility in search and recommendations and, in fact, the "lower level" CMS uploads, which are not subject to duplication content detection, typically received 10–15x higher uploads than the CMS uploads which are subject to duplication content detection.

e. YouTube knowingly accepts and processes fraudulent counter-notifications submitted under the DCMA automatically, without verification, despite possessing full identifying information for the CMS partners submitting such counter-notifications under their contractual agreements. This conduct constitutes willful blindness and demonstrates preferential treatment toward the "bad actors"/CMS "privileged" partners, effectively enabling continued monetization of pirated works and obstructing legitimate copyright enforcement.

f. By having constructive knowledge of widespread copyright infringement on the YouTube platform and channels therein by certain entities based on information provided to YouTube by third parties and copyright owners advising YouTube of said infringement, wherein YouTube has intentionally avoided confirming said infringement and taking remedial action, thus constituting willful blindness.

g. By creating a second tier CMS system which has an algorithmic preference allowing the sale of more advertisements and increased YouTube profits by platforming pirated Content.

62. By one or more of the above actions, YouTube collaborated with copyright infringers, and deliberately or with willful blindness contributed to copyright infringement on a massive scale, specifically denying Plaintiff and the prospective class of independent filmmakers and Content providers fair market access and monetization at least since the date of creating this multi-tier system.

63. YouTube's CMS system, as structured and operated, violates and contributes to violations of U.S. copyright law, the Digital Millennium Copyright Act (DMCA), and unfair competition statutes by enabling select partners to profit from infringing content while denying equal enforcement and access to others.

WHEREFORE, Plaintiffs and the prospective class of independent filmmakers and Content providers respectfully request:

A.      Entry of judgment in their favor and against YouTube, and a finding that YouTube contributed to the infringement of copyrights in the Content owned by Plaintiffs and the prospective class of independent filmmakers and Content providers.

B.      Statutory damages pursuant to 17 U.S.C. § 504(c) in an amount between $750 and $30,000 per work infringed, or up to $150,000 per work for willful infringement, at Plaintiffs' election.

C.      Actual damages and YouTube's profits attributable to the infringement under 17 U.S.C. § 504(b), at Plaintiff's election, to be determined at trial.

D.      A preliminary and permanent injunction under 17 U.S.C. § 502(a) and 28 U.S.C. § 1498 enjoining YouTube from storing, permitting uploading, distributing, displaying, or providing for the public availability of the copyrighted Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers.

E.      An order terminating and dismantling all CMS accounts and related YouTube channels associated with the infringing Content.

F.      An order requiring a comprehensive audit of all CMS and O&O (Owned and Operated) accounts, and all other relevant financial records, of YouTube to determine the extent of infringing content and revenue generated therefrom.

G.      An order requiring YouTube to remove or disable access to all copies of the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers on its platform, pursuant to 17 U.S.C. § 512(j).

18

H.      An order under 17 U.S.C. § 503(b) for the impoundment and destruction of all copies of the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers on the YouTube platform or on any server accessible by YouTube.

I.      Reasonable attorneys' fees and costs under 17 U.S.C. § 505 due to YouTube's willful infringement.

J.      Prejudgment and post-judgment interest on all monetary awards.

K.      Such other and further relief as the Court deems just and proper.

## COUNT III – VICARIOUS COPYRIGHT INFRINGEMENT

64.      Plaintiff incorporates paragraphs 1 – 63 as if fully set forth herein.

65.      YouTube had both the right and ability to control access to Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers on its platform, and financially benefited from the availability of Content to the public, and thus satisfies the two-element test for vicarious copyright infringement.

66.      As a consequence of this dispute between the parties as to the right, title, and interest in the copyright material described above, and pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, Plaintiff and the prospective class of independent filmmakers and Content providers also seek resolution of this ongoing controversy by a declaration of this Court as to the rights of the respective parties in this matter.

67.      WHEREFORE, Plaintiffs and the prospective class of independent filmmakers and Content providers respectfully request:

A.      Entry of judgment in their favor and against Defendants in the form of a declaration that YouTube's CMS constitutes a separate and privileged operational tier of the YouTube platform, designed and maintained in a manner that knowingly or wantonly facilitates copyright infringement and unfair competition.

19

B.     An award of damages sufficient to compensate Plaintiffs and the prospective class of independent filmmakers and Content providers as a result of YouTube's actions, including statutory damages or a disgorgement of profits obtained by YouTube from its actions at the option of Plaintiffs and the prospective class of independent filmmakers and Content providers.

C.     A preliminary and permanent injunction enjoining YouTube from storing, permitting uploading, distributing, displaying, or providing for the public availability of the copyrighted Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers.

D.     An order requiring YouTube to terminate and dismantle all CMS accounts and related YouTube channels operated by any entity that has uploaded, distributed, displayed, or provided public access to any infringing Content on the YouTube platform.

E.     An order requiring a comprehensive audit of all CMS and O&O (Owned and Operated) accounts, and any other relevant financial records, of YouTube to determine the extent of the infringement and revenue generated therefrom to permit a determination of applicable damages.

F.     An order requiring YouTube to remove or disable access to all copies of the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers on its platform.

G.     Reasonable attorneys' fees and costs.

H.     Prejudgment and post-judgment interest on all monetary awards.

I.     Such other and further relief as the Court deems just and proper.

## COUNT IV

## UNFAIR BUSINESS PRACTICES AGAINST ALL DEFENDANTS

68.     Plaintiff incorporates paragraphs 1 – 67 as if fully set forth herein.

20

69.     Defendants have engaged in fraudulent, deceptive, unfair and wrongful conduct by utilizing Plaintiff and the prospective class of independent filmmakers and Content provider's copyrighted Content in products which Defendants developed, produced and marketed without permission.  Defendants have engaged in said conduct at least as early as about May 2024.

70.     Defendants have further engaged in fraudulent, deceptive, unfair and wrongful conduct by falsely claiming ownership of the Content without the permission or prior knowledge of Plaintiff and the prospective class of independent filmmakers and Content providers, and falsely and fraudulently claimed to Plaintiff's licensee-distributor that they had the permission of Plaintiff and the prospective class of independent filmmakers and Content providers.

71.     By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as herein alleged, Defendants committed unlawful, unfair, and fraudulent business practices, designed to deprive Plaintiff and the prospective class of independent filmmakers and Content providers of the profits they could have earned had Defendants not engaged in unfair business practices.

72.     By reason of the foregoing, Plaintiff and the prospective class of independent filmmakers and Content providers has suffered and continues to suffer damages in a sum which is as yet unascertained but which will be proven at time of trial.

73.     WHEREFORE, Plaintiffs and the prospective class of independent filmmakers and Content providers respectfully request:

A.     An award of damages sufficient to compensate Plaintiffs and the prospective class of independent filmmakers and Content providers as a result of Defendants' unfair business practices.

B.      An order requiring YouTube to terminate and dismantle all CMS accounts and related YouTube channels operated by any entity that has uploaded, distributed, displayed, or provided public access to any infringing Content on the YouTube platform.

C.      An order requiring a comprehensive audit of all CMS and O&O (Owned and Operated) accounts of YouTube and those of Defendants to determine the extent of infringing content and revenue generated therefrom.

D.      An order requiring YouTube to remove or disable access to all copies of the Content owned by Plaintiff and the prospective class of independent filmmakers and Content providers on its platform.

E.      Reasonable attorneys' fees and costs.

F.      Prejudgment and post-judgment interest on all monetary awards.

G.      Such other and further relief as the Court deems just and proper.

## COUNT V

## UNJUST ENRICHMENT

74.      Plaintiff incorporates paragraphs 1 – 73 as if fully set forth herein.

75.      YouTube had actual and constructive knowledge of the widespread misuse of CMS accounts for piracy and fraudulent monetization, as repeatedly reported by the prospective class of independent filmmakers and Content providers.  Despite this, YouTube failed to suspend or audit the implicated CMS accounts and continued to process payments, thus facilitating ongoing infringement and unjust enrichment of both the CMS operators and itself.

76.      These acts further constitute and unjust enrichment on the part of YouTube, as the company profited from ad revenue generated through known pirated and infringing CMS accounts.

77.      WHEREFORE, Plaintiff and the prospective class of independent filmmakers and Content providers respectfully request entry of a judgment in their favor and against Defendants,

award compensatory damages for losses suffered by Plaintiff and the prospective class of independent filmmakers and Content providers resulting from Defendants' unjust enrichment.

## COUNT VI

## ACCOUNTING

78.     Plaintiff incorporates paragraphs 1 – 77 as if fully set forth herein.

79.     As a result of the aforementioned allegations, Defendants have received revenue and generated profits, which revenue and profits are due to Plaintiff, Plaintiff's licensee-distributor, and the prospective class of independent filmmakers and Content providers, as previously alleged.

80.     The amount of revenue and profits due from Defendants to Plaintiff, Plaintiff's licensee-distributor, and the prospective class of independent filmmakers and Content providers is currently unknown and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions. Plaintiff is informed and believes and thereon alleges that, based on the extensive pirating/infringement activities of the Defendants relative to a large number of films, television series and other audiovideo content, the amount due to Plaintiff, Plaintiff's licensee-distributor, and the prospective class of independent filmmakers and Content providers, exceeds $100,000,000.

81.     Plaintiff hereby demands an accounting of the aforementioned transactions from Defendants' and payment of the amount found due.

82.     WHEREFORE, Plaintiff and the prospective class of independent filmmakers and Content providers respectfully request entry of an order directing an accounting be conducted against all Defendants to determine all damages owed Plaintiff and the prospective class of independent filmmakers and Content providers under any theory set forth in this complaint, the

cost of such accounting to be paid by Defendants, as well as any other relief this Court may deem just.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: December 19, 2025

Respectfully submitted,

By: /Jay Paul Deratany/
Jay Paul Deratany (ARDC No. 6197097)
jpderatany@lawinjury.com

**THE DERATANY FIRM**
221 North LaSalle Street, Suite 2200
Chicago, Illinois 60601
Telephone: (312) 857-7285

Christopher T. Griffith (ARDC No. 6197487)
cgriffith@greengriffith.com

**GREEN, GRIFFITH & ASSOCIATES LLP**
20 N. Clark Street, Suite 3300
Chicago, Illinois 60602
Telephone: (312) 883-8008

*Attorneys for Plaintiff*